**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT MICHIGAN**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| Address 24.192.133.52, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A**
**RULE 26(f) CONFERENCE**

[Remainder of page intentionally left blank]

i

# TABLE OF CONTENTS

I.   INTRODUCTION ..............................................................................1

II.   FACTS ..........................................................................................2

   A.   Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business .................................................2

   B.   Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics ...................................4

   C.   Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously................................................................................6

   D.   The Infringer ..............................................................................6

III.   ARGUMENT...................................................................................7

   A.   Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant .................................................................7

   B.   Good Cause Exists to Grant the Motion..............................................9

     1.   Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement ......9

      a.   Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement ..........................................................................11

     2.   Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery ..................................................................................13

     3.   No Alternative Means Exist to Obtain Defendant's True Identity .............14

     4.   Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims ....................................................................................17

     5.   Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous..........................................18

   C.   Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction..................................................................19

IV.   CONCLUSION.................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*AF Holdings LLC v. Doe*, 2012 U.S. Dist. LEXIS 152395 (N.D. Cal. Oct. 23, 2012) ................................................................................................................18

*Aguilar v. Parris*, 2016 U.S. Dist. LEXIS 131384 (M.D. Tenn. Sept. 26, 2016) ...20

*Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) .................... 7, 8, 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................ 9, 12

*Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) ........................8

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) ..8

*Clear Skies Nev., LLC v. Doe,* 2015 U.S. Dist. LEXIS 141489 (E.D. Mich. Oct. 19, 2015) ................................................................................................................13

*Cobbler Nev., LLC v. Doe*, 2015 U.S. Dist. LEXIS 90989 (E.D. Mich. July 14, 2015) ............................................................................................................ 8, 13

*Cobbler Nevada, LLC v. Does*, No. 2:15-cv-11871, 2015 WL 4276082 (E.D. Mich. July 14, 2015) ..........................................................................................................16

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007) ...........18

*Dallas Buyers Club, LLC v. Doe,* 2015 U.S. Dist. LEXIS 12188 (D. Conn. Feb. 3, 2015 ................................................................................................................12

*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ......................................................8

*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ............................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ......................9

*Ford Motor Co. v. Autel US Inc.*, 2016 U.S. Dist. LEXIS 85875 (E.D. Mich. July 1, 2016) ................................................................................................................11

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007) ...........................................8

*In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) .........................9

*In re Malibu Media*, No. 15-cv-1855, 2015 WL 3605834 (E.D.N.Y. June 8, 2015) ................................................................................................................16

*James v. Hampton,* 592 Fed. Appx. 449, 454 (6th Cir. 2015) ................................12

*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 188 (S.D.N.Y. 2012) ................16

*Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) .......................................................8

*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) .................................................9

*Malibu Media LLC v. Doe*, 2013 U.S. Dist. LEXIS 132341 (E.D. Mich. Sept. 17, 2013) ................................................................................................................7

*Malibu Media LLC v. John Does 1-12*, 2012 WL 5928528 (C.D. Ill. 2012) ..........16

*Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 92466 (E.D. Mich. July 2, 2013) ................................................................................. 12, 13, 15, 18, 19

*Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 107084 (E.D. Mich. Aug. 5, 2014) ...............................................................................................20

*Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 141831 (S.D. Ohio Oct. 6, 2014) ...............................................................................................20

*Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 169246 (E.D. Mich. Dec. 8, 2014) .................................................................................................8

*Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 4795 ( E.D. Mich. Jan. 15, 2015) ...............................................................................................13

*Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 92069 (D.N.J. July 14, 2016) ......................................................................................................17

*Malibu Media, LLC v. Doe*, 297 F.R.D. 323, 328 (W.D. Mich. 2012) ........ 9, 15, 19

*Malibu Media, LLC v. Doe*, No. 1:15-cv-00366 (E.D. Va. July 23, 2015) .............12

*Malibu Media, LLC v. Doe*, No. 1:15-cv-01834, 2015 WL 4403407 (S.D.N.Y. July 20, 2015) ...........................................................................................16

*Malibu Media, LLC v. Doe*, No. 14-3945, 2015 WL 3795716 (D. N.J. June 18, 2015) ...............................................................................................13

*Malibu Media, LLC v. Doe*, No. 14-cv-00223, 2014 WL 4682793 (D. Md. Sept. 18, 2014) .............................................................................................5

*Malibu Media, LLC v. Doe*, No. 14-cv-0932, 2015 WL 2451926 (E.D. Wisc. May, 21, 2015) ...........................................................................................12

*Malibu Media, LLC v. Doe*, No. No. PWG-13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) .........................................................................................12

*Malibu Media, LLC v. Dreev*, No. 6:13-cv-1959 (M.D. Fla. Jan. 5, 2015) .............12

*Malibu Media, LLC v. Harris*, No. 1:12-cv-1117, 2013 WL 3780571 (S.D. Ind. July 18, 2013) .........................................................................................11

*Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013) ...............................................................4

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ...............................................................................................11

*Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013) ...............................................................................4

*Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH (E.D. Mich. May 16, 2013)..................................................................................5

*Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012).........5

*Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013) ..................................................................................................5

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP (M.D. Fla. July 6, 2012) ......................................................................................5

*Media v. Subscriber*, 2013 U.S. Dist. LEXIS 92467 (E.D. Mich. July 2, 2013) 8, 15

*Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ...................................................9

*Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005)............14

*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011)............................8

*Purzel Video GmbH v. Doe*, 2013 U.S. Dist. LEXIS 179738 (N.D. Ill. Dec. 19, 2013) .......................................................................................19

*Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).18

*Rotten Records, Inc. v. Doe*, No. 1:15-cv-0446, 2015 WL 3540007 (W.D.N.Y. June 4, 2015)...........................................................................16

*Safety Point Prods., LLC v. Does 1-57*, 2013 U.S. Dist. LEXIS 49521 (E.D. Tenn. Apr. 5, 2013) .............................................................................19

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ..........14

*Sorenson v. Wolfson*, No. 10 cv 4596, 2015 WL 1454498 (S.D.N.Y. Mar. 31, 2015) .......................................................................................10

*United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) .......................................................................................20

*Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015).....10

*Voltage Pictures, LLC v. Does*, No. 13-cv-01121, 2013 WL 4028587 (D. Colo. Aug. 7, 2013) ...........................................................................15

*Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009)..................8

**Statutes**

17 U.S.C. § 410(c) ...................................................................................10

17 U.S.C. §106......................................................................................9

47 U.S.C. § 551(c)(2)(B) ...........................................................................13

**Rules**

FED. R. CIV. P. 26(d)(1).............................................................................7

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE</u>

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum in support of its Motion for Leave to serve a third party subpoena prior to a Rule 26(f) conference.

## I.    INTRODUCTION

Plaintiff, Malibu Media, (d/b/a "X-art.com") operates a popular subscription based website.[1]  Plaintiff creates its own content, which is being infringed on a massive scale.  The John Doe Defendant's IP address has been habitually used to infringe Plaintiff's copyrighted works.  Accordingly, Plaintiff seeks leave to serve limited, immediate discovery on the John Doe Defendant's Internet Service Provider, WideOpenWest (hereafter "ISP") so that Plaintiff may learn Defendant's true identity.  Plaintiff is suing Defendant for using the Internet, specifically the BitTorrent file distribution network, to commit direct copyright infringement.

Because Defendant used the Internet to commit this infringement, Plaintiff only knows Defendant by his Internet Protocol ("IP") address.  Defendant's IP address was assigned to the Defendant by his ISP.  Accordingly, the ISP can use the IP address to identify the Defendant.[2]  Indeed, ISPs maintain internal logs, which record the date, time, and customer identity for each IP address assignment

---

[1] *See, e.g.*, Declaration of Colette Pelissier, attached hereto as Exhibit "A."
[2] *See, e.g.*, Declaration of Patrick Paige, attached hereto as Exhibit "B."

made by that ISP.  Significantly, ISPs may maintain these logs for only a short period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP.  This subpoena will demand the true name and address of Defendant.  Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit to protect its valuable copyrights.

## II.   FACTS

### A.   Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Colette Pelissier is the owner of Malibu Media.  *See* Exhibit A at ¶ 3.  Ms. Pelissier developed the X-Art.com business plan in 2010 while still working full time as a realtor in the Los Angeles market.  *Id*. at ¶ 4.  X-Art.com was created to address the lack of artistically produced adult oriented content suitable for upscale women and couples. *Id*. Ms. Pelissier chose the name 'X-Art' to reflect her artistic aspirations, and began investing all of her available money and resources into the production of content – particularly erotic movies with high production value and a

---

[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

cinematic quality.  *Id.* at ¶ 8.  She knew that the adult content industry was in financial crisis, and the odds of success for a new adult website were low. *Id.*

Her vision has come to fruition.  Currently X-Art.com has tens of thousands of paying subscribers, but Malibu Media is finding it hard to grow and maintain the memberships when so many of the movies are being distributed for free, without authorization, by users of the BitTorrent Network. *See generally id*.  As X-Art's subscriber base has grown, production expenditures have also grown.  *Id.* at ¶ 9. Plaintiff spends over two million dollars a year producing content, and millions more each year to run the business. *Id.*  For the first several years of operation, X-Art did not have significant issues with piracy.  *Id.* at ¶ 10.  However, once our content became well known and highly desirable, X-Art movies started ranking as the most downloaded adult content on several of the most popular torrent websites. *Id*.  Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id*. at ¶ 21**.** Malibu Media is even working with law enforcement to stop the piracy of our movies.  *Id*.  Despite sending thousands of DMCA notices per week, the infringement continues.  *Id*. at ¶ 22.  And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free. *Id*.  Plaintiff Malibu Media has filed suit in this judicial district and in judicial

districts across the country seeking to deter and stop the infringement.

Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013). In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson found "Malibu has satisfied its burden of proof with substantial evidence and deserves a large award." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

B. <u>Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (emphasis in original). The Honorable Judge Hegarty of the District of Colorado has also acknowledged Plaintiff's good faith and stated: "the Court has . . . witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *E.g.*, *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

4

Other courts have opined that the criticism often attributed to filers of BitTorrent lawsuits is unwarranted when directed at Plaintiff.  "[N]one of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel.  We are reluctant to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale." *Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012). "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] *15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] *7 (M.D. Fla. July 6, 2012) (same); *see also Malibu Media, LLC v. Doe*, No. 14-cv-00223, 2014 WL 4682793, *1 (D. Md. Sept. 18, 2014) ("Malibu has complied with these procedures and this Court is unaware of *any* allegations of abuse.").

C. <u>Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously</u>

Plaintiff has filed this suit for the sole purpose of protecting and enforcing its copyrights.

> We do not seek to use the Court system to profit from the infringement like some have suggested. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. We want the infringement to stop. The purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.

Exhibit A at ¶ 31.  Plaintiff has no intention of embarrassing Defendant because of the content of the works at issue and has instructed all of its counsel to always consent to allowing defendants to proceed anonymously through discovery. Further, Plaintiff does not extend settlement offers prior to serving a defendant with the complaint and in all of its individual suits against a defendant, has only settled prior to serving when the defendant has initiated the request.  Should the Court wish to include language in its Order preventing Plaintiff from initiating settlements with Defendant and allowing Defendant to proceed anonymously, Plaintiff will not object.

D. <u>The Infringer</u>

Defendant's Internet was used to infringe 14 of Plaintiff's copyrighted movies between 06/28/2015 and 01/05/2018.  *See* Exhibit A to Complaint.  By

downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11–25.

The length of time which Plaintiff's investigator recorded Defendant utilizing the BitTorrent protocol to download and distribute works on the Internet demonstrates that the Infringer was not a mere guest or passerby. It was someone with access to Defendant's Internet for a long period of time, consistently.

## III. ARGUMENT

### A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

Except for circumstances not applicable here, a party may not propound discovery in advance of a Rule 26(f) conference absent court order. *See* FED. R. CIV. P. 26(d)(1). Since the identification of the infringer is "*indispensable* for the vindication of [a] plaintiff's copyright rights," courts readily authorize expedited discovery in online copyright infringement cases. *Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) (emphasis supplied). Indeed, courts have adopted a "flexible standard of reasonableness and good cause" to grant motions that seek leave to identify infringers known only by an anonymous IP address. *See id.*; *Malibu Media LLC v. Doe*, 2013 U.S. Dist. LEXIS 132341, *2 (E.D. Mich. Sept. 17, 2013) (collecting cases). To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific

7

discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy. *E.g.*, *Cobbler Nev., LLC v. Doe*, 2015 U.S. Dist. LEXIS 90989, \*3 (E.D. Mich. July 14, 2015); *Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 169246, \*6 (E.D. Mich. Dec. 8, 2014); *Media v. Subscriber*, 2013 U.S. Dist. LEXIS 92467, \*3-4 (E.D. Mich. July 2, 2013) (citing *Arista Records*, 604 F.3d at 119)).

Federal Circuit Courts have unanimously approved of this procedure of using expedited discovery to identify anonymous defendants. "Plaintiffs are permitted to bring suit against unnamed 'John Doe' defendants until discovery or other information reveals the identity of the party." *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010).

"[C]ourts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's . . . until the plaintiff has had some opportunity for discovery to learn the identities." *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998)*; see also*, *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of the correct defendant."). *Accord Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (same); *Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368

(9th Cir. 2009) (same); *Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007) (same); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) (same); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (same); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (same); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (same).

   B. Good Cause Exists to Grant the Motion

      *1. Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement*

To sufficiently state a *prima facie* claim of infringement, Plaintiff must plausibly allege: (1) ownership of a valid copyright and (2) unauthorized copying of original elements of the copyrighted work. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Malibu Media, LLC v. Doe*, 297 F.R.D. 323, 328 (W.D. Mich. 2012). Plaintiff's Complaint meets these requirements:

   30.  Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

   31.  By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

   32.  Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

Complaint at ¶¶ 30–32. *See* 17 U.S.C. §106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files

containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) ("Plaintiff has made a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement.").

Since Plaintiff obtained copyrights for its works from the United States Register of Copyrights, *see* CM/ECF 1-2 (providing registration numbers), it establishes *prima facie* evidence that its works are copyrightable and validly copyrighted.  *See* 17 U.S.C. § 410(c); *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015) ("A certificate of registration constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate.") (internal quotations and citations omitted).[4]  Further, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, IPP International UG employee, Tobias Fieser.  *See* Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a

---

[4] The burden will therefore fall on Defendant to "demonstrate that [Plaintiff's works] are not copyrightable," *Sorenson v. Wolfson*, No. 10 cv 4596, 2015 WL 1454498, *11 (S.D.N.Y. Mar. 31, 2015) (Koeltl).

Rule 26(f) Conference ("Fieser Declaration"), at ¶¶ 8–10, attached hereto as Exhibit "C." And, each digital file, as identified by a unique cryptographic file hash value, has been verified to be a copy or contain copies of one of Plaintiff's copyrighted works. *Id*.

Indeed, the infringement detection system Plaintiff uses to identify infringers has been tested and deemed valid. *See generally* Exhibit "B." During the first ever BitTorrent copyright lawsuit to reach trial, Judge Baylson likewise concluded Plaintiff's technology was valid. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("I concluded that Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants—both of whom were located in Germany and who testified at the trial of June 10, 2013—was valid.").

a. <u>Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement</u>

Since plausibility is the standard, "[p]roof is not required to properly plead a claim for copyright infringement," and Plaintiff does not need to establish with 100% certainty that Defendant, the individual assigned the infringing IP address, is the infringer. *Malibu Media, LLC v. Harris*, No. 1:12-cv-1117, 2013 WL 3780571, *3 (S.D. Ind. July 18, 2013); *Ford Motor Co. v. Autel US Inc.*, 2016 U.S. Dist. LEXIS 85875, *7–8 (E.D. Mich. July 1, 2016) ("[T]o plead copyright

infringement, a party must show plausible grounds for infringement by pleading 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of copyright infringement.") (citation omitted). Plaintiff must only plead enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *James v. Hampton,* 592 Fed. Appx. 449, 454 (6th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Consequently, Plaintiff's well-pled allegations constitute "a concrete, *prima facie* case of copyright infringement." *Malibu Media, LLC*, 2013 WL 3732839 at *5; *see also, e.g.*, *Malibu Media, LLC v. Doe*, No. 1:15-cv-00366, CM/ECF 16 (E.D. Va. July 23, 2015) ("It is reasonable to draw the inference that the party responsible for downloading . . . was the party responsible for the internet connection. Malibu Media is not required to prove its case at the pleading stage."); *Malibu Media, LLC v. Doe*, No. 14-cv-0932, 2015 WL 2451926, *3 (E.D. Wisc. May, 21, 2015) (same); *Malibu Media, LLC v. Dreev*, No. 6:13-cv-1959, CM/ECF 35 (M.D. Fla. Jan. 5, 2015) (same); *Malibu Media, LLC v. Doe*, No. No. PWG-13-365, 2014 WL 7188822, *5 (D. Md. Dec. 16, 2014) (same); *Dallas Buyers Club, LLC v. Doe,* 2015 U.S. Dist. LEXIS 12188, *1 (D. Conn. Feb. 3, 2015) ("After setting forth a plausible prima facie claim, however, DBC has no additional duty, at the pleading stage, to plead particularized facts for each individual who may

12

have used an infringing IP address."); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 92466, *4–5 ( E.D. Mich. July 2, 2013).[5]

      2. *Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery*

Plaintiff seeks to discover from the Defendant's ISP the true name and address of the Defendant.  This is all specific information in the possession of Defendant's ISP that will enable Plaintiff to serve process on Defendant.  This limited and specific request satisfies the second good cause factor because it only seeks that which is necessary to enable Plaintiff to effectuate service on Defendant and proceed with this lawsuit.  *See Clear Skies Nev., LLC v. Doe,* 2015 U.S. Dist. LEXIS 141489, *2–3 (E.D. Mich. Oct. 19, 2015) ("Disclosure of the information requested is ordered pursuant to 47 U.S.C. § 551(c)(2)(B), which authorizes cable operators to disclose personally identifiable information when the cable operators are ordered to do so by a court. Any information disclosed to Plaintiff in response to the Rule 45 subpoena may be used solely for the purpose of protecting Plaintiff's rights as set forth in the Complaint."); *Cobbler Nev., LLC v. Doe*, 2015 U.S. Dist. LEXIS 90989, *3–4  (E.D. Mich. July 14, 2015); *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 4795, *6–7 ( E.D. Mich. Jan. 15, 2015); *Malibu Media, LLC v.*

---

[5] Even if Defendant is not the infringer, "the information sought by the subpoena is reasonably calculated to lead to the discovery of information necessary to allow Plaintiff to ascertain the infringer's true identity."  *Malibu Media, LLC v. Doe*, No. 14-3945, 2015 WL 3795716, *2–4 (D. N.J. June 18, 2015).

*Doe*, 2013 U.S. Dist. LEXIS 92466, *4–5 (E.D. Mich. July 2, 2013) ("The information is also necessary, otherwise unavailable and the information sought, as modified by this Court's order, is narrowly tailored to the limited purpose of discovering the identity of the individual associated with the identified IP address.").

### 3. No Alternative Means Exist to Obtain Defendant's True Identity

There are no publicly-available databases or "yellow pages" that can identify an individual by an IP address; Plaintiff knows Defendant only by his or her IP address. The government, law enforcement officials, criminal and civil judges, and ISPs alike all acknowledge that subpoenaing an ISP is the only way to identify an internet subscriber. Congress has also so found, and has expressly created this system for copyright holders to subpoena ISPs in order to identify copyright infringers.[6]

People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned

---

[6] Major record labels and film studios also enforce their copyrights against piracy in the federal court system in this way. *See, e.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ("Shortly after peer-to-peer networks first appeared, plaintiffs acknowledged the threat they posed to their industry and initiated a broad campaign to address the illegal infringement of copyrighted materials."); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) ("With the aid of other technological developments, the internet also has afforded users with opportunities to infringe on the rights of owners of copyrighted works, including motion pictures.").

to and how to get in contact with them."[7] ISPs' records "are the **only available evidence** that allows us to investigate who committed crimes on the Internet. They may be the **only way to learn, for example, that a certain Internet address was used by a particular human being** to engage in or facilitate a criminal offense."[8]

The Government—and law enforcement in particular—also acknowledges that issuing a subpoena to the responsible ISP is the only way to identify the subscriber of an IP address. Plaintiff's forensics expert has affirmed that during the eleven years he spent investigating computer crimes, the government *always* had to obtain subscribers' identifying information from ISPs. *See* Exhibit "B" at ¶¶ 13–16, 36. And, every single case that Plaintiff has reviewed supports this conclusion. *See, e.g.*, *Media v. Subscriber*, 2013 U.S. Dist. LEXIS 92467, *4–5 (E.D. Mich. July 2, 2013); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 92466, *4–5 (E.D. Mich. July 2, 2013); *Malibu Media, LLC v. Doe*, 297 F.R.D. 323, 328 (W.D. Mich. 2012); *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 6649, *12 (S.D. Ohio Jan. 21, 2015).

District courts across the country likewise recognize this, routinely explaining "the Court can think of no other reasonable way of discovering the infringer than by permitting Plaintiff discovery into the identity of Doe." *Voltage*

---

[7] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[8] Statement from Jason Weinstein, n.3, *supra*.

*Pictures, LLC v. Does*, No. 13-cv-01121, 2013 WL 4028587, *3 (D. Colo. Aug. 7, 2013). "[S]ubpoenaing the ISP . . . is the *only* means to obtain identifying information" *Malibu Media, LLC v. Doe*, No. 1:15-cv-01834, 2015 WL 4403407, *2 (S.D.N.Y. July 20, 2015) (Koeltl). *Accord Cobbler Nevada, LLC v. Does*, No. 2:15-cv-11871, 2015 WL 4276082, *1 (E.D. Mich. July 14, 2015) (same); *In re Malibu Media*, No. 15-cv-1855, 2015 WL 3605834, *4 (E.D.N.Y. June 8, 2015) (same); *Rotten Records, Inc. v. Doe*, No. 1:15-cv-0446, 2015 WL 3540007, *1 (W.D.N.Y. June 4, 2015) (same). *See also John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 188 (S.D.N.Y. 2012) ("[Plaintiff] has explained that the use of the BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address . . . . [Plaintiff] has established that it lacks the means to obtain the subscriber's identifying information, other than by subpoena."); *Malibu Media LLC v. John Does 1-12*, 2012 WL 5928528 (C.D. Ill. 2012) ("Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy.").

Prior to seeking leave to subpoena WideOpenWest, Plaintiff searched for Defendant's IP address on various web search tools, including basic search engines like http://www.google.com. Plaintiff further conducted its own research on its

ability to identify Defendant by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).   Plaintiff also discussed the issue at length with its computer forensics investigator—an individual who was tasked with the responsibility of investigating and identifying cybercriminals for over ten years.   *See generally* Exhibit "B."   And, Plaintiff discussed these issues with at least two different ISPs.[9]   In short, there is no way to obtain the identity of an Internet subscriber except from the subscriber's ISP.

### 4.   *Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims*

Without learning the Defendant's true identity, Plaintiff will not be able to serve the Defendant with process and proceed with this case.   Plaintiff's important statutorily protected property rights are at issue in this suit and, therefore, the equities weigh heavily in favor of preserving Plaintiff's rights.   That is, "Without Defendant's identifying information, Plaintiff would be unable to enforce its rights over the named copyrighted works." *Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 92069, *11 (D.N.J. July 14, 2016).   Indeed, as set forth above, Plaintiff has chosen to file suit only against the worst of the worst infringers–i.e. those that have repeatedly infringed numerous works over an extended period of time.

---

[9] The ISPs with whom Plaintiff consulted confirmed their unique ability to identify their Internet subscribers, but neither were willing to provide an affidavit absent court order.  Should these communications be pertinent to the Court's analysis, Plaintiff can supply them upon request.

Because identifying Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor. *See Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) ("Ascertaining the identities and residencies of the Doe defendant[] is critical to [Plaintiff's] ability to pursue litigation, for without this information, [Plaintiff] will be unable to serve process." *(quoting Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004)); see also *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 92466, *4–5 (E.D. Mich. July 2, 2013); *AF Holdings LLC v. Doe*, 2012 U.S. Dist. LEXIS 152395, *5–6 (N.D. Cal. Oct. 23, 2012) (collecting cases).

> 5. *Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous*

Finally, Plaintiff satisfies the fifth good cause factor because Plaintiff has a strong, legitimate, and Constitutionally-protected interest in enforcing its copyrights. Defendant, on the other hand, is a systematic copyright infringer—or at the very least the subscriber to an IP address that is being used to infringe copyrights. As a matter of law, Internet subscribers do not have a legitimate expectation of privacy in allowing their wireless Internet connections to be used to anonymously and illegally distribute copyrighted content. *See, e.g.*, *Raw Films, Ltd. v. John Does 1-15*, No. 11-7248, 2012 WL 1019067, *8 (E.D. Pa. Mar. 26, 2012); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007).

Nor does Defendant have an expectation of privacy in his identifying information "because [that information] has already been exposed to a third party, the Internet Service Provider." *Malibu Media, LLC v. Does*, No. 1:12-cv-263, 2012 WL 6019259, *4 (N.D. Ind. Dec. 3, 2012); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 92466, *4 (E.D. Mich. July 2, 2013) (collecting cases); *Safety Point Prods., LLC v. Does 1-57*, 2013 U.S. Dist. LEXIS 49521, *4–5 (E.D. Tenn. Apr. 5, 2013) ("The federal courts have consistently held that internet subscribers do not have a reasonable expectation of privacy in their subscriber information — including their name and address — as they have already conveyed such information to their ISPs.") (collecting cases); *Malibu Media, LLC v. Doe*, 297 F.R.D. 323, 328 (W.D. Mich. 2012) ("Defendant voluntarily provided this information to the third-party ISP that is subject to the subpoena.").  Defendant's desire to remain anonymous is necessarily outweighed by Plaintiff's legal rights. *See Arista Records, LLC*, 604 F.3d at 117, 124 ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected"); *Purzel Video GmbH v. Doe*, 2013 U.S. Dist. LEXIS 179738, *9–10 (N.D. Ill. Dec. 19, 2013) ("Although the defendants do have a right to express themselves anonymously on the internet, those speech rights are limited and are outweighed by Purzel's need for the subpoenaed information.").

C. Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction

As set forth in Plaintiff's Complaint, "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District." *See* Complaint at ¶ 5.  Specifically, Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of Michigan and this district.

Courts have previously held that "[w]hile such publicly available IP locators are not 100% accurate, they have been accepted as making out a prima facie case of personal jurisdiction." *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012); *see Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 107084, *2 (E.D. Mich. Aug. 5, 2014) (granting motion for leave after establishing good cause and jurisdiction using geolocation); *Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 141831, *4 (S.D. Ohio Oct. 6, 2014) (quashing defendnat's motion to dismiss Plaintiff's subpoena).  From Plaintiff's experience, Maxmind's Geolocation database has consistently predicted the location of the Defendant 99% of the time.  Indeed, this exact geolocation technology has also been relied upon by federal law enforcement.  *See United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is

20

sufficient to establish probable cause); *Aguilar v. Parris*, 2016 U.S. Dist. LEXIS 131384, *34 (M.D. Tenn. Sept. 26, 2016); (used by Homeland Security to identify the defendant).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to the ISP..

Respectfully submitted,

**BOROJA, BERNIER & ASSOCIATES PLLC**

/s/ *Joel A. Bernier*
**By:  JOEL A. BERNIER (P74226)**
49139 Schoenherr Rd.
Shelby Township, MI 48315
T: 586-991-7611
F: 586-991-7612
Email: Bbclawgroup@gmail.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to E. D. Mich. LR 5.1(a) I hereby certify that the foregoing has been prepared using one of the font and point selections approved by the Court in E. D. Mich. LR 5.1(a)(3).  This document was prepared using Times New Roman (14 pt.).

/s/ <i>Joel A. Bernier</i>
**By:  JOEL A. BERNIER (P74226)**
